### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

#### CASE NO. 24-CR-20529-BB

UNITED STATES OF AMERICA,

                Plaintiff.

v.

ROMAN SINYAVSKY,

                Defendant.

_____/

### OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT
### BY DEFENDANT ROMAN SINYAVSKY

Defendant Roman Sinyavsky, by and through undersigned counsel, submit his objections to the Pre-Sentence Investigation Report ("PSR") issued by U.S. Probation ("Probation"). In support thereof, Mr. Sinyavsky requests the following amendments or reconsiderations:

**Part A. The Offense**

Paragraph 5 states that "[t]he parties agreed to recommend to the Court that the defendant be sentenced within the advisory guideline range as determined by the Court." Mr. Sinyavsky objects to the reference to "[t]he parties," as the Plea Agreement expressly states that "*[t]he Offices will recommend to the Court that the defendant be sentenced within the advisory sentencing guideline range as determined by the Court.*" Plea Agreement ¶ 10 (D.E. 17) (emphasis added). The Plea Agreement defines "the Offices" as various sections and divisions of the U.S. Department of Justice. The agreement therefore reflects a recommendation by the Department of Justice—not by all parties.

Paragraph 22 concludes with "Abramov was a client of Sinyavsky from at least as early as 2016 and was (sic) Sinyavsky from at least as early as 2008." As provided in the Factual Proffer,

Viktor Pavlovich Perevalov was one of Mr. Sinyavsky's clients since at least as early as 2008. Factual Proffer ¶ 11 (D.E. 16).

Paragraph 17 states that "[t]he defendant was listed as a 'c/o party', or care of party, for all three [Wells Fargo] accounts" belonging to Valeri Vyacheslavovich Abramov and his wife. Although Mr. Sinyavsky was listed as a "care of party," he had no authority or ability to control any funds in the accounts.

Paragraph 33 states that "Sinyavsky engaged in the maintenance, transfer, sale, and the lease of the Blocked Properties." Mr. Sinyavsky objects to the reference to the "Blocked Properties," which collectively refer to Unit 606 at 2600 Island Boulevard Williams Island in Aventura, Florida and Units 1616 & 1617 in 10295 Collins Avenue in Bal Harbour, Florida. Mr. Sinyavsky objects because he never engaged in the lease of Unit 606 or in a sale of either Unit 1616 or 1617.

Paragraph 33 further states that "Sinyavsky also collected, shared, and laundered the proceeds generated by the violations of the January 2018 Sanctions." Mr. Sinyavsky objects to this language as overbroad, as there were proceeds over which he exercised no control. By way of example, Robert Abramson, the attorney and title agent in the transaction involving the sale of Unit 606, was responsible for collecting and wiring funds at closing, which included a wire of $868,922.10 to a Polish bank account controlled by Abramov's wife.

Paragraph 55 states that "[o]n March 29, 2019, Abramson wired $64,720.80 into a U.S. bank account in Sinyavsky's name…" This account was under the name of Family International Realty, LLC.

Paragraph 56 states that "[o]n March 29, 2019, Abramson wired $64,720.80 into a U.S. bank account in the defendant's name." There was only one wire in the amount of $64,720.80

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

completed by Abramson. Accordingly, Paragraph 56 is duplicative of Paragraph 55 and contains the same error.

Paragraph 57 states that "[o]n or about April 1, 2019, in the Southern District of Florida, Sinyavsky received $56,649.65 in proceeds from the sale of Unit 606, and later this same day received an additional $64,720.80 in proceeds from the sale of Unit 606, totaling $121,370.45, which was all wired into his Wells Fargo Bank account ending in 5969." In fact, Family International Realty was the recipient of the referenced $56,649.65 check ($55,654.65 in sales commission, plus a $995 reimbursement of a processing fee) and the referenced $64,720.80 wire for "Reimb. Of Servicing (2 years)." *See* Factual Proffer ¶¶ 43, 45-46 (D.E. 16).

Paragraph 75 states that "[o]n March 9, 2023, OFAC sent Sinyavsky, as manager of 1616 Collins, LLC, a third-party blocking notification informing him that Units 1616 & 1617 were blocked property because of Perevalov's ownership interest and that unauthorized transactions in blocked property could result in both civil and criminal penalties." In fact, a March 24, 2023 letter from The Ritz Carlton states that it—not Mr. Sinyavsky—"received a notification from [OFAC] that [] Units [1616 & 1617] [were] blocked."

Paragraphs 82 through 86 provide that because the conspiracy conviction is for a two-object conspiracy, the objects are groupable and the applicable guideline section is the one that results in the highest offense level, §2M5.1 or §2S1.1. As contemplated by the plea agreement, the base offense level for each guideline is 26. However, paragraph 86 provides that "[b]ecause the offense of conviction is a violation of 18 U.S.C. §1956, the offense level is increased by two levels, §2S1.1(b)(2)(B)," resulting in an adjusted offense level of 28. Mr. Sinyavksy objects to this two-point increase on several grounds. First, the offense of conviction is 18 U.S.C. §371, not 18 U.S.C. §1956. And while "money laundering" is listed as an object of the conspiracy in the plea

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

agreement, the agreement does not specify whether the relevant object is a violation of §1956 or §1957. That distinction matters because §1957 does not trigger the two-level increase under §2S1.1(b)(2)(B); instead, it calls for only a one-level increase under §2S1.1(b)(2)(A). Thus, it is not merely that the two-level enhancement is "inapplicable"—it is incorrect to apply it at all, as it is impossible to determine which (if any) enhancement provision applies based on the plea agreement alone.

Moreover, Paragraph 9 of the plea agreement, which discusses the calculation of the base offense level, confirms that the parties jointly agreed to recommend a total offense level of 26, thereby rejecting the application of any enhancement, including the two-level increase now proposed in the Pre-Sentence Investigation Report. It expressly states that "[t]he parties agree that the base offense level for the defendant's offense is 26 pursuant to Section 2M5.1(a)(1) of the Sentencing Guidelines." Notably, paragraph 9 of the agreement also does not reference §1956 or §2S1.1, nor does it identify any enhancement under §2S1.1(b). Accordingly, the decision to base the offense level calculation solely on §2M5.1(a)(1), without reference to §1956 or §2S1.1, confirms that the enhancement is not only inconsistent with the agreed-upon terms—it is unsupported by the plea agreement and should not apply.

**Part C. Offender Characteristics**

**Personal and Family Data**

Paragraph 106 states that, "according to Zillow.com, the fair market value of [his residence] is $2,000,000." Mr. Sinyavsky objects to the use of Zillow.com—a third-party website with unknown inputs—to determine the fair market value of the property. According to the Miami-Dade Property Appraiser's Website, the fair market value of the property is $1,653,750.

**Physical Condition**

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

Paragraph 109 states "offense" instead of "office" in the first line.

**Employment Record**

Paragraph 124 states that, "[a]ccording to the defendant, the business is currently operated with the help of his daughters and has assets totaling $17,659 in checking accounts." Since the date of Mr. Sinyavsky's interview with Probation, banking institutions have sought the closure of his and his family's accounts, imposing a significant hardship on Mr. Sinyavsky and his family. Mr. Sinyavsky has recently opened a new account for Family International Realty with First Horizon bank and will be depositing some funds in that account, but the account does not currently have funds.

**Financial Condition: Ability to Pay**

Paragraph 126 lists Mr. Sinyavsky's assets and denotes with an asterisk (*) when those assets are jointly owned by Mr. Sinyavsky and his wife. Since the date of Mr. Sinyavsky's interview with Probation, the banking institutions that previously held assets in Mr. Sinyavsky's name forcibly closed the existing accounts. Thus, Mr. Sinyavsky is being forced to transfer the funds to new accounts. Two of the accounts listed under assets have also had a reduction in value as detailed below in the discussion pertaining to paragraph 127.

Paragraph 126 also provides that the value of Mr. Sinyavsky's portion of the marital residence is $1,000,000. That value is premised on a $2,000,000 Zillow.com valuation. As noted in the objections to paragraph 106, above, a more accurate valuation of the property is $1,653,750. Thus, Mr. Sinyavsky's share of the asset is $826,825, not $1,000,000.

Furthermore, Probation determined that Mr. Sinyavsky has a monthly income of $31,622. However, this so-called "income" actually reflects the total amount of his monthly expenses, including a required payment to OFAC. These funds are not earned income but are instead drawn

5

from Mr. Sinyavsky's savings. Thus, this amount should not be characterized as "monthly income," but rather as a monthly liability.

**Analysis**

Paragraph 127 states that Mr. Sinyavsky's accounts were "forced closed in 2023 and 2024," "[t]he defendant reported that he has an IRA with Morgan Stanley that has a balance of $351,577," and "he and his wife have a joint brokerage account with Morgan Stanley that has a balance of $713,366 and a joint [] annuity account with a balance of $268,931." As noted above, Mr. Sinyavsky is transferring those funds due to involuntary bank account closures. Furthermore, the value of the funds derived from Mr. Sinyavsky's individual IRA account is currently $312,849 rather than $351,577. The value of the funds from the joint annuity account that Mr. Sinyavsky had with his wife is currently $250,698 rather than $268,931.

Paragraph 128 As noted above, the proper valuation of Mr. Sinyavsky's residence is $1,653,750.

Paragraph 131 notes "[t]he only assets of the business are two bank accounts noted above, which have balances totaling $17,659." As previously noted, the Family International Realty account was forcibly closed. Mr. Sinyavsky has opened a new account with First Horizon bank as noted above.

Paragraph 134 states "[b]ased on the aforementioned, it appears that the defendant has the ability to pay a fine in this case." Mr. Sinyavsky, however, does not have the means to pay an additional fine. He has already agreed to pay a money judgment of $182,442, which represents his total earnings from the offense conduct, to the Department of Justice. In addition, Mr. Sinyavsky is making substantial monthly payments to OFAC to pay off a large penalty imposed by OFAC of

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

$1,076,923[1], emanating from the same offense conduct. Moreover, Mr. Sinyavsky is elderly, suffers from serious medical conditions and likely will lose his real estate license due to his conviction for the instant offense. Thus, Mr. Sinyavsky has a very limited capacity to earn income. He is largely drawing down on his limited retirement savings to pay the significant penalties already imposed on him by OFAC and DOJ.

**Part D. Sentencing Options**

Paragraph 136 calculates the imprisonment range based on a guidelines offense level of 23 but the proper guidelines offense level is 21, which has a guidelines range of 37 to 46 months.

**Impact of Plea Agreement**

Paragraph 137 states that "[t]here is no impact of the plea agreement in this case." Mr. Sinyavsky objects to the notion that the plea agreement has no impact on this case. In the plea agreement, the parties agreed to a stipulated base offense level of 26. A greater base offense level should not be applied.

Paragraph 145 provides that probation has not identified factors that warrant a departure or variance. There are, however, numerous grounds for a downward departure and variance, which will be fully developed in Mr. Sinyavsky's sentencing memorandum to the Court.

**Standard Conditions of Supervision**

Paragraph 159 provides that Mr. Sinyavsky must work full time for at least 40 hours per week. Due to Mr. Sinyavsky's age and medical condition, he is unable to work full time.

**Recommended Special Conditions**

---

[1] The OFAC penalty includes a credit to Mr. Sinyavsky for the $182,422 payment to DOJ and could be further reduced based on Mr. Sinyavsky's ongoing cooperation.

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

With respect to Paragraphs 166 (Financial Disclosure Requirement) and 167 (No New Debt Restriction), Mr. Sinyavsky respectfully objects to the inclusion of these special conditions as they are not needed in his case. Mr. Sinyavsky has already provided undersigned counsel with the $182,442.00 that is subject to this Court's forfeiture order, which will be remitted to DOJ. Mr. Sinyavsky has also provided extensive financial disclosures to Probation and OFAC in connection with this Presentence Investigation Report and with his settlement with OFAC in which he voluntarily agreed to an OFAC penalty totaling $1,076,923.00, with Mr. Sinyavsky making monthly payments to OFAC totaling $21,565.00. Given Mr. Sinyavsky's cooperation with DOJ and OFAC—and the fact that he will satisfy the $182,442 forfeiture amount well in advance of his sentencing—Mr. Sinyavsky submits that these invasive and onerous special conditions are not necessary.

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

Dated: April 4, 2025

Respectfully Submitted,

*/s/ Barbara R. Llanes*
BARBARA LLANES
Florida Bar No. 1032727
bllanes@gsgpa.com
JUAN CARLOS ZAMORA JR.
Florida Bar No. 0111828
jzamora@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

*Counsel for Roman Sinyavsky*

*/s/ Alejandro O. Soto*
Alejandro O. Soto, Esq.
Florida Bar No. 0172847
Fridman Fels & Soto, PLLC
150 Alhambra Circle, Suite 715
Coral Gables, FL  33134
Telephone: 305 569 7707
asoto@ffslawfirm.com

*Counsel for Roman Sinyavsky*